IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RBS CITIZENS, NATIONAL ASSOCIATION, as successor by merger to Charter One Bank, N.A., <br><br> Plaintiff, <br><br> v. <br><br> RICHARD S. GAMMONLEY; <br> RICHARD T. GAMMONLEY; <br> CHARLES DI GIOVANNI, as trustee for the 573 North Washington Land Trust; <br> 573 NORTH WASHIGNTON LAND TRUST; <br> CHARLES DI GIOVANNI, as trustee for the 1111 S. Wabash Unit 2602 Land Trust; <br> 1111 S. WABASH UNIT 2602 LAND TRUST; <br> 14326 BLUFF ROAD LAND TRUST; and <br> SAMSON PROPERTIES, LLC—SERIES B, <br><br> Defendants. | Case No. 12 C 8659 <br><br> Hon. Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiff RBS Citizens National Association ("RBS"), as successor by merger to Charter One Bank, N.A. ("the Bank"), has sued Defendants Richard S. Gammonley ("RSG"); Richard T. Gammonley ("RTG" and together with RSG, the "Gammonleys"); Charles Di Giovanni, as Trustee for both the 673 North Washington Land Trust and the 1111 S. Wabash Unit 2602 Land Trust; 573 North Washington Land Trust; 14326 Bluff Road Land Trust; and Samson Properties, LLC—Series B ("Samson") (collectively, "the Defendants") to void what Plaintiff contends were fraudulent transfers of assets and interests pursuant to the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 Ill. Comp. Stat. 160 (2003). Defendants move to dismiss Plaintiff's First Amended Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth herein, Defendants' motion is denied.

# Facts[1]

In 2005, Defendants RTG and RSG were both officers of a company, R.T.G. Land Development Corporation, which effectively controlled RTG-Bloomingdale, LLC. (Am. Compl. ¶ 21.) On December 16, 2005, RTG-Bloomingdale, LLC, executed two agreements with the Bank: (1) a construction loan agreement, and (2) a construction completion guaranty agreement. The construction loan agreement was executed in connection with RTG-Bloomingdale's development of real property located in Bloomingdale, Illinois. (*Id*. ¶¶ 20, 21.)

Also on that date, RTG-Bloomingdale executed a revolving credit promissory note in favor of the Bank in the amount of twenty seven million dollars. (*Id*. ¶ 22.) In addition, RTG-Bloomingdale executed an open-end construction mortgage (together with the construction agreement and promissory note, the "Bloomingdale loan"). (*Id*. ¶ 23.) That same day, Defendants RTG and RSG also executed an individual guaranty agreement in favor of the Bank, which required the Gammonleys to personally pay the Bank any outstanding payments due under the Bloomingdale loan in the event that RTG-Bloomingdale were to default. (*Id*. ¶¶ 25, 26.)

In October and November of 2007, RTG-Bloomingdale defaulted on the Bloomingdale loan on at least three occasions, each of which permitted the Bank, under the terms of the construction loan agreement, to declare the promissory note due and payable by the Gammonleys without presentment, demand, protest or notice. (*Id*. ¶¶ 27-32.) At the time of the three defaults, the Bloomindale Loan had an outstanding balance in excess of $20,000,000.00. (*Id*. ¶ 33.) The Gammonleys and the Bank executed a forbearance and loan modification agreement on January 15, 2008, in which the Gammonleys made various promises to the Bank in exchange for the Bank's promise not to exercise its rights against RTG-Bloomingdale and the Gammonleys for

---

[1] The following facts are taken from Plaintiff's Amended Complaint and are assumed to be true for purposes of this motion to dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

defaulting on the Bloomingdale loan. (*Id*. ¶¶ 33-37.) The Bank and the Gammonleys amended the forbearance agreement on March 27, 2008. (*Id*. ¶ 38.) In the amended forbearance agreement, the Gammonleys expressly acknowledged defaulting on the Bloomingdale loan on two additional occasions, on February 29, 2008 and March 31, 2008. (*Id*. ¶ 40.)

On June 15, 2008, RTG-Bloomingdale and the Gammonleys defaulted on the amended forbearance agreement, and the Bank and the Gammonleys executed a second forbearance agreement. (*Id*. ¶ 42.) The Gammonleys, however, defaulted on the second forbearance agreement as well, at which time the Bloomindale loan still had an outstanding balance in excess of $20,000,000.00. (*Id*. ¶ 44.)

Subsequently, on February 9, 2009, the Bank filed a complaint (the "Bloomingdale Complaint") against the Gammonleys and others for foreclosure and other relief in the Circuit Court of DuPage County, Illinois. (*Id*. ¶ 46.) On May 18, 2012, the Circuit Court of DuPage County entered a joint and several judgment in favor of the Bank and against the Gammonleys in the amount of $20,366,634.16. (*Id*. ¶ 48.)

Separately, on July 24, 2006, Defendant RTG's company, RTG-Oak Lawn LLC, executed a term note (the "Oak Lawn loan") in favor of the Bank in the amount of $3,376,000.00. (*Id*. ¶ 49.) As with the Bloomingdale loan, Defendant RTG executed an unlimited guaranty in favor of the Bank, which provided that Defendant RTG would be personally, directly, unconditionally, and immediately liable to the Bank in the event that RTG-Oak Lawn defaulted on the Oak Lawn loan. (*Id*. ¶¶ 50-51.)

RTG-Oak Lawn defaulted on the Oak Lawn loan on April 8, 2009. (*Id*. ¶ 52.) After serving notice of demand upon RTG-Oak Lawn and the Gammonleys, the Bank filed a complaint against the Gammonleys in the Circuit Court of DuPage County, Illinois on September

7, 2010. (*Id*. ¶¶ 54-55.) On May 17, 2012, the Circuit Court entered a final judgment order in favor of the Bank and against the Gammonleys in the amount of $3,619,745.58. (*Id*. ¶ 57.)

On November 16, 2007, only a few weeks after Defendant RSG became personally liable to the Bank for more than $20,000,000.00, Defendant RSG conveyed property located at 573 North Washington, Hinsdale, Illinois (the "North Washington property"), then-valued at more than $1,400,000.00, to himself and his wife, Lisa Gammonley, as tenants by the entirety. (*Id*. ¶¶ 60-61.) According to Plaintiff, RSG effectuated the transfer with the sole and actual intent to hinder, delay, or defraud the Bank. (*Id*. ¶ 62.) On May 13, 2010, RSG once again transferred the North Washington property allegedly for the purpose of defrauding the Bank; this time to Defendant Di Giovanni as the North Washington Trustee in exchange for $10.00. (*Id*. ¶¶ 67, 68.) Defendant Di Giovanni was allegedly either the initial transferee of the North Washington property, a person who directly benefitted from the second North Washington property transfer, or merely a subsequent transferee of the North Washington Property. (*Id*. ¶ 69.)

On February 29, 2012, at a time when Defendant RSG knew that he was personally liable to the Bank for over $23,000,000.00, RSG conveyed his interest in timeshare units (the "Timeshare Units") located in the U.S. Virgin Islands to five different trusts in exchange for $10.00. (*Id*. ¶¶ 85, 86.) The beneficiaries of the trusts were RSG's five minor children. (*Id*. ¶ 86.) As such, Defendant RSG retained effective control over the property by virtue of his status as a parent. (*Id*. ¶ 89.) According to Plaintiff, RSG effectuated the transfer with the sole and actual intent to hinder, delay, or defraud the Bank. (*Id*. ¶ 88.)

In or around September 2009, Defendant RSG and his wife transferred various personal property ("RSG personal property") located at their North Washington property to either a trust or entity for the alleged purpose of hindering, delaying, or defrauding the bank. (*Id*. ¶¶ 104,

4

106.) Defendant RSG retained effective control over the personal property through his continued residence at the North Washington property. (*Id*. ¶ 108.)

On June 24, 2010, Defendant RTG conveyed property located at 1111 S. Wabash, Unit 2602, Chicago, Illinois (the "Wabash property"), then-valued at more than $875,000.00, to Defendant Di Giovanni, as the Wabash Trustee, in exchange for zero consideration. (*Id*. ¶¶ 120, 122.) RTG effectuated the transfer with the actual intent to hinder, delay, or defraud the Bank. (*Id*. ¶ 123.) At the time of the transfer, Defendant RTG knew that he was personally liable to the Bank for more than $23,000,000.00. (*Id*. ¶ 121.) Again, Defendant Di Giovanni was allegedly either the initial transferee of the Wabash property, a person who directly benefitted from the Wabash property transfer, or merely a subsequent transferee of the Wabash Property. (*Id*. ¶ 125.)

Four days later, on June 28, 2010, Defendant RTG conveyed his property located at 14326 Bluff Road, Lakeside, Michigan (the "Bluff Road property") to the Bluff Road Trust in exchange for $10.00. (*Id*. ¶ 141.) The Bluff Road property was valued at $4,990,000.00 at the time of the transfer, which was again consummated allegedly for the purpose of hindering, delaying, or defrauding the Bank. (*Id*. ¶ 142.)

Finally, on March 12, 2010, Defendant RTG transferred his interest in various items of personal property located at the Bluff Road property, including paintings, silver, boats, and cars (collectively, "RTG personal property") to Defendant Samson for little or no consideration. (*Id*. ¶¶ 159, 167.) At the time of the transfer, RTG knew that he was personally liable to the bank for more than $20,000,000.00. (*Id*. ¶ 161.) RTG allegedly carried out the transfer with the actual intent to hinder, delay, or defraud the Bank. (*Id*. ¶ 160.)

Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) on two grounds. They contend that: (1) Plaintiff has failed to adequately plead claims for fraud in fact under 740 Ill. Comp. Stat. 160/5(a)(1) ("§ 5(a)(1) of the IUFTA"); and (2) Plaintiff has failed to adequately plead claims for fraud in law under 740 Ill. Comp. Stat. 160/5(a)(2) ("§ 5(a)(2) of the IUFTA") and/or 740 Ill. Comp. Stat. 160/6(a) ("§ 6(a) of the IUFTA"). The Court will address each issue in turn.

## **Discussion**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Actions based on fraud, however, must meet a heightened pleading standard to survive a Rule 12(b)(6) motion to dismiss. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997); *see* Fed. R. Civ. P. 9(b). Specifically, Rule 9(b) requires that a complaint involving fraud include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)) (internal quotations omitted). Courts require this heightened pleading standard to "assure that the claim is responsible and supported, rather than defamatory and extortionate." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)

(quoting *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999)) (internal quotations omitted).

The IUFTA specifically protects against two types of fraud: actual fraud (otherwise referred to as fraud in fact), (§ 5(a)(1)), and constructive fraud (otherwise referred to as fraud in law), (§§ 5(a)(2) and 6(a)). *See* 740 Ill. Comp. Stat. 160; *Gen. Elec. Capital Corp.*, 128 F.3d at 1078. A complaint alleging a violation of §§ 5(a)(1), 5(a)(2), or 6(a) of the IUFTA must therefore meet Rule 9(b)'s heightened pleading standard to survive a motion to dismiss under Rule 12(b)(6). *See id*. It follows that, here, because each of the Amended Complaint's twelve counts alleges either fraud in fact or fraud in law, each count must meet Rule 9(b)'s heightened, "who, what, when, where, and how" pleading standard to survive Defendants' motion to dismiss under Rule 12(b)(6). *See Borsellino*, 477 F.3d at 507

### A. Fraud in Fact

Defendants first argue that the Court should dismiss Counts I, III, V, VII, IX and XI of the Complaint under Rule 12(b)(6) because the counts fail to sufficiently plead claims of fraud in fact pursuant to § 5(a)(1) of the IUFTA. For the reasons set forth below, however, the Court finds that the Amended Complaint's allegations of fraud in fact satisfy Rule 9(b)'s heightened pleading standard. Therefore, the Court denies Defendants' motion to dismiss Counts I, III, V, VI, IX, and XI of the Amended Complaint.

First, Defendants contend that Plaintiff fails because it has not sufficiently alleged that Defendants' six property transfers were made with the "actual intent to hinder, delay, or defraud the creditors." 740 Ill. Comp. Stat. 160/5(a)(1). Section 5(b) of the IUFTA outlines eleven factors, known as the "badges of fraud," that courts should consider in determining whether there is "actual intent." *See In re Spatz,* 222 B.R. 157, 168 (Bkrtcy. N.D. Ill. 1998). Defendants

7

appear to argue that the Court should dismiss Counts I, III, V, VI, IX, and XI because Plaintiff has failed to allege all of the "badges of fraud" enumerated in §5(b). But it is well-established that no one enumerated factor is dispositive. *See id.*; *see also In re Equip. Acquisition Res., Inc.*, 481 B.R. 422, 431 (Bankr. N.D. Ill. 2012) ("A single badge of fraud is insufficient to establish intent, but the presence of several may create a presumption that the debtor acted with the requisite intent to defraud."). Nor is the list intended to be an exhaustive one. *See* 740 Ill. Comp. Stat. 160/5(b) (noting that the court can consider the badges of fraud "among other factors"); *Frank IX & Sons, Inc. v. Phillipp Indus., Inc.*, 1997 WL 534509, at *8 (N.D. Ill. Aug. 25, 1997) (holding that "section 5(b)'s list of 'badges of fraud' is not all-inclusive, and the court may also consider other evidence"). Rather, at this early stage in the litigation, it is sufficient for Plaintiff to allege the "who, what, when, where, and how" of Defendants' fraud, along with facts from which the Court can reasonably infer that Defendants acted with actual intent.

Here, Plaintiff's twelve counts meet these requirements by describing: the specific parties involved in each of the property transfers ("who"); the description of each property involved in the transfers ("what"); the exact dates of each transfer and the dates' relation to Defendants' outstanding obligations ("when"); the location of each transfer ("where"); and the means by which the Defendants effectuated each transfer ("how"). (Am. Compl. ¶¶ 2-9, 61, 67, 82-89, 104-08, 120-26, 139-44, 159-62.) Furthermore, each of Plaintiff's six fraud in fact counts alleges at least three badges of fraud under § 5(b) of the IUFTA to indicate how Defendants acted with the requisite intent.

For example, in Count I, Plaintiff alleges that: (1) the first North Washington transfer was to an insider, RSG and his wife; (2) RSG retained control of the North Washington property after its transfer; and (3) RSG consummated the transfer just days after he became aware that he

8

was personally liable to the bank for more than $20,000,000. (*Id*. ¶¶ 61, 63.) Plaintiff further alleges in Count I that, with respect to the second North Washington transfer: (1) RSG had already been engaged in litigation prior to the transfer; (2) RSG transferred the North Washington property to Defendant Di Giovanni for only $10.00; and (3) RSG knew that he would soon be ordered to pay substantial judgment to RBS. (*Id*. ¶¶ 66, 67.)

In Count III, Plaintiff alleges that: (1) RSG transferred timeshare units to his children's trust (*id*. ¶ 86); (2) RSG retained effective control over the timeshare units because his children were under the age of 18 (*id*. ¶ 89); (3) RSG was in the middle of litigation with RBS at the time of the transfer (*id*. ¶¶ 27-33, 85, 89); (4) RSG transferred the property for $10.00 (*id*. ¶ 86); and (5) according to Plaintiff, RSG knew that the court was about to render a substantial personal judgment against him at the time of the transfer (*id*. ¶¶ 27-33, 85, 89).

In Counts V and XI, Plaintiff alleges that: (1) RSG and RTG retained effective control over the North Washington property and RTG personal property, respectively, as they continued to reside at the North Washington and Bluff Road properties following the two transfers (*id*. ¶¶ 108, 159); (2) RSG and RTG were in the middle of litigation with RBS at the time of the transfers (*id*. ¶¶ 27-33, 103, 158); and (3) RSG and RTG both knew that the court was about to render a substantial personal judgment against them at the time of the two transfers (*id*. ¶¶ 27-33, 103, 158).

Similarly, in Counts VII and IX, Plaintiff alleges that: (1) RSG and RTG were in the middle of litigation with RBS at the time of the two transfers (*id*. ¶¶ 27-33, 121, 140); (2) RSG and RTG each received either zero consideration, or a mere $10.00, in return for the two transfers (*id*. ¶¶ 122, 141); and (3) RSG and RTG both knew that the court was about to render a

substantial personal judgment against them at the time of the two transfers (*id*. ¶¶ 27-33, 121, 140).

As a result, the Court finds that Counts I, III, V, VII, IX, and XI satisfy Rule 9(b)'s "who, what, when, where, and how" pleading standard and allege sufficient facts from which actual intent can be reasonably inferred.

In their motion, Defendants also argue that Counts I, III, V, VII, IX, and XI of the Complaint should be dismissed due to Plaintiff's failure to allege that Defendant received inadequate consideration in exchange for the six property transfers. This argument is similarly unpersuasive. "[F]ull consideration is *not*, as a matter of law, an absolute defense to fraud in fact." *Spatz,* 222 B.R., at 169 (emphasis added); *see Equip. Acquisition Res., Inc.*, 481 B.R. at 428 ("[u]nlike transfers that are only constructively fraudulent, the equivalence of value given in exchange for the actual intent fraudulent transfer is immaterial to the question whether the transfer is actually fraudulent.") As such, the Court denies Defendants' motion to dismiss the six Counts for failure to adequately plead lack of consideration.

**B.     Constructive Fraud**

Defendants also move to dismiss Counts II, IV, VI, VIII, X, and XII of the Complaint for failure to state a claim against Defendants for constructive fraud pursuant to §§ 5(a)(2) or 6(a) of the IUFTA. In addition to satisfying 9(b)'s "who, what, when, where, and how" standard, in order to plead a sufficient cause of action under §§ 5(a)(2) or 6(a) of the IUFTA, a complaint must also allege that: "(1) the debtor made a voluntary transfer; (2) at the time of the transfer, the debtor had incurred obligations elsewhere; (3) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and (4) after the transfer the debtor failed to retain sufficient property to pay the indebtedness." *Zimmerman v. Paulsen*, 524 F.

Supp. 2d 1077, 1080 (citing *Gen. Elec. Capital Corp.*, 128 F.3d at 1079) (internal citation omitted).

Here, Defendants argue that Plaintiff failed to allege that Defendants had not receive reasonably equivalent value in exchange for the six transfers. The Seventh Circuit has held that "a transfer lacks reasonably equivalent value if there is no or inadequate consideration." *Creditor's Comm. of Jumer's Castle Lodge v. Jumer*, 472 F.3d 943, 947 (7th Cir. 2007). Furthermore, the appropriate test is "to determine the value of what was transferred and to compare it to what was received." *Id.* "[T]he standard for [r]easonable equivalence should depend on all the facts of each case, an important element of which is fair market value." *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997).

Applying this standard to the facts alleged, the Court finds that Counts II, IV, VI, VIII, X, and XII sufficiently allege that Defendants failed to receive reasonably equivalent value in exchange for the six transfers. Specifically, each Count alleges that Defendants transferred property, ranging in fair market value from thousands of dollars to over four million dollars, in return for either zero consideration or a mere $10.00.

For example, Count II alleges that Defendant RSG transferred the North Washington property, then valued at more than $1,400,000.00, to Defendant Di Giovanni in exchange for $10.00. (Am. Compl. ¶¶ 59, 67.) Count IV alleges that RSG and his wife transferred timeshare units valued at over $60,000.00 to various trusts in exchange for $10.00 (*Id*. ¶¶ 83, 86.) Count VI alleges that Defendant RSG transferred five televisions, two stereo systems, a refrigerator, a Viking range, and exercise equipment to a trust or entity in exchange for zero consideration. (*Id*. ¶¶ 111, 114, 115.) Count VIII alleges that Defendant RTG transferred the Wabash Property, then possessing a fair market value in excess of $875,000.00, to Defendant Di Giovanni in

exchange for zero consideration. (*Id.* ¶¶ 120, 122, 131.) Count X alleges that Defendant RTG transferred the Bluff Road Property, possessing a fair market value in excess of $4,990,000.00, to the Bluff Road Trust in exchange for $10.00. (*Id.* ¶¶ 139, 141.) Finally, Count XII alleges that Defendant RTG transferred any and all of his rights, title and interest in his household effects, paintings, collectibles, jewelry, chinaware, silver, works of art, boats, cars, and other tangible property, along with the insurance policies thereon, to Defendant Samson, all in exchange for zero consideration. (*Id.* ¶¶ 159, 167.)

Therefore, all six Counts sufficiently allege that Defendants failed to receive reasonably equivalent value in exchange for the six property transfers, and Defendants' motion to dismiss Counts II, IV, VI, VIII, X, and XII for failure to adequately plead fraud in law is denied.

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, the Court denies Defendants' motion to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

October 23, 2013.

**SO ORDERED**  ENTER: 10/23/13

                                                                    _____
                                                                    **JOHN Z. LEE**
                                                                    **United States District Judge**