IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RBS CITIZENS, NATIONAL ASSOCIATION, as successor by merger to Charter One Bank, N.A., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 12 C 8659 |
| RICHARD S. GAMMONLEY; RICHARD T. GAMMONLEY; LISA M. GAMMONLEY; JILL CLEMONS GAMMONLEY; CHARLES DI GIOVANNI, AS TRUSTEE FOR 573 NORTH WASHINGTON LAND TRUST; 573 NORTH WASHINGTON LAND TRUST; CHARLES DI GIOVANNI, AS TRUSTEE FOR 1111 S. WABASH UNIT 2602 LAND TRUST; 1111 S. WABASH UNIT 2602 LAND TRUST; CHARLES DIGIOVANNI, AS TRUSTEE FOR 14326 BLUFF ROAD LAND TRUST; 14326 BLUFF ROAD LAND TRUST; RICHARD S. GAMMONLEY, AS TRUSTEE FOR THE RICHARD S. GAMMONLEY TRUST; RICHARD S. GAMMONLEY TRUST; RICHARD T. GAMMONLEY AS TRUSTEE OF THE RICHARD S. AND LISA M. GAMMONLEY 2009 CHILDREN'S TRUSTS; RICHARD S. & LISA M. GAMMONLEY 2009 CHILDREN'S TRUSTS; SPYDER LLC – SERIES B; SPYDER, LLC – SERIES C; SAMSON PROPERTIES, LLC – SERIES A; SAMSON PROPERTIES, LLC – SERIES B; SAMSON PROPERTIES, LLC – SERIES C; SAMSON PROPERTIES, LLC – SERIES D; SAMSON PROPERTIES, LLC – SERIES F, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge John Z. Lee |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff RBS Citizens National Association ("RBS"), as successor by merger to Charter One Bank, N.A. ("the Bank"), has sued Defendants Richard S. Gammonley ("RSG"); Richard T. Gammonley ("RTG" and together with RSG, the "Gammonleys"); Lisa M. Gammonley; Jill

Clemons Gammonley; Charles Di Giovanni, as Trustee for the 573 North Washington Land Trust, 1111 S. Wabash Unit 2602 Land Trust, and 14326 Bluff Road Land Trust; 573 North Washington Land Trust; 1111 S. Wabash Unit 2602 Land Trust; 14326 Bluff Road Land Trust; Richard S. Gammonley, as Trustee for the Richard S. Gammonley Trust; Richard S. Gammonley as Trustee of the Richard S. and Lisa M. Gammonley 2009 Children's Trusts; The Richard S. and Lisa M. Gammonley 2009 Children's Trust; Spyder LLC – Series B; Spyder, LLC – Series C; Samson Properties, LLC – Series A; Samson Properties, LLC—Series B; Samson Properties, LLC – Series C; Samson Properties, LLC – Series D; Samson Properties, LLC – Series F (collectively, "the Defendants")[1] to void what Plaintiff contends were fraudulent transfers of assets and interests pursuant to the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 Ill. Comp. Stat. 160 (2003). Defendants move to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons provided herein, the Court denies Defendants' motion.

**Factual Background**[2]

In 2005, Defendants RTG and RSG were both officers of a company, R.T.G. Land Development Corporation, which effectively controlled RTG-Bloomingdale, LLC. (2d Am. Compl. ¶ 46.) On December 16, 2005, RTG-Bloomingdale, LLC, executed two agreements with the Bank: (1) a construction loan agreement, and (2) a construction completion guaranty agreement. The construction loan agreement was executed in connection with RTG-Bloomingdale's development of real property located in Bloomingdale, Illinois. (*Id.* ¶¶ 45, 46.)

---

[1] This Court previously denied Defendants' Rule 12(b)(6) motion to dismiss. *See* Oct. 23, 2013 Order. Defendants argued that (1) Plaintiff failed to adequately plead claims for fraud in fact under 740 Ill. Comp. Stat. 160/5(a)(1); and (2) Plaintiff failed to adequately plead claims for fraud in law under 740 Ill. Comp. Stat. 160/5(a)(2) and/or 740 Ill. Comp. Stat. 160/6(a).

[2] The following facts are taken from Plaintiff's Second Amended Complaint and are assumed to be true for purposes of this motion to dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

Also on that date, RTG-Bloomingdale executed a revolving credit promissory note in favor of the Bank in the amount of twenty seven million dollars. (*Id*. ¶ 47.) In addition, RTG-Bloomingdale executed an open-end construction mortgage (together with the construction agreement and promissory note, the "Bloomingdale loan"). (*Id*. ¶ 48.) That same day, Defendants RTG and RSG also executed an individual guaranty agreement in favor of the Bank, which required the Gammonleys to personally pay the Bank any outstanding payments due under the Bloomingdale loan in the event that RTG-Bloomingdale were to default. (*Id*. ¶¶ 50, 51.)

In October and November of 2007, RTG-Bloomingdale defaulted on the Bloomingdale loan on at least three occasions, each of which permitted the Bank, under the terms of the construction loan agreement, to declare the promissory note due and payable by the Gammonleys without presentment, demand, protest or notice. (*Id*. ¶¶ 52-58.) At the time of the three defaults, the Bloomingdale Loan had an outstanding balance in excess of $20,000,000.00. (*Id*. ¶ 58.) The Gammonleys and the Bank executed a forbearance and loan modification agreement on January 15, 2008, in which the Gammonleys made various promises to the Bank in exchange for the Bank's promise not to exercise its rights against RTG-Bloomingdale and the Gammonleys for defaulting on the Bloomingdale loan. (*Id*. ¶¶ 59-66.) The Bank and the Gammonleys amended the forbearance agreement on March 27, 2008. (*Id*. ¶¶ 63-66.) In the amended forbearance agreement, the Gammonleys expressly acknowledged defaulting on the Bloomingdale loan on two additional occasions, on February 29, 2008 and March 31, 2008. (*Id*. ¶ 65.)

On June 15, 2008, RTG-Bloomingdale and the Gammonleys defaulted on the amended forbearance agreement, and the Bank and the Gammonleys executed a second forbearance agreement. (*Id*. ¶¶ 67-70.) The Gammonleys, however, defaulted on the second forbearance

3

agreement as well, at which time the Bloomingdale loan still had an outstanding balance in excess of $20,000,000.00. (*Id*. ¶ 70.)

Subsequently, on February 9, 2009, the Bank filed a complaint (the "Bloomingdale Complaint") against the Gammonleys and others for foreclosure and other relief in the Circuit Court of DuPage County, Illinois. (*Id*. ¶ 71.) On May 18, 2012, the Circuit Court of DuPage County, Illinois entered a joint and several judgment in favor of the Bank and against the Gammonleys in the amount of $20,366,634.16. (*Id*. ¶ 73.)

Separately, on July 24, 2006, Defendant RTG's company, RTG-Oak Lawn LLC, executed a term note (the "Oak Lawn loan") in favor of the Bank in the amount of $3,376,000.00. (*Id*. ¶ 74.) As with the Bloomingdale loan, Defendant RTG executed an unlimited guaranty in favor of the Bank, which provided that Defendant RTG would be personally, directly, unconditionally, and immediately liable to the Bank in the event that RTG-Oak Lawn defaulted on the Oak Lawn loan. (*Id*. ¶¶ 75-76.)

RTG-Oak Lawn defaulted on the Oak Lawn loan on April 8, 2009. (*Id*. ¶ 77.) After serving a notice of demand upon RTG-Oak Lawn and the Gammonleys, the Bank filed a complaint against the Gammonleys in the Circuit Court of DuPage County, Illinois on September 7, 2010. (*Id*. ¶¶ 80-82.) On May 17, 2012, the Circuit Court entered a final judgment order in favor of the Bank and against the Gammonleys in the amount of $3,619,745.58. (*Id*. ¶ 82.)

On November 16, 2007, a few weeks after Defendant RSG became personally liable to the Bank for more than $20,000,000.00, Defendant RSG conveyed property located at 573 North Washington, Hinsdale, Illinois (the "North Washington property"), then-valued at more than $1,400,000.00, to himself and his wife, Lisa Gammonley, as tenants by the entirety. (*Id*. ¶¶ 86.) According to Plaintiff, RSG effectuated the transfer with the sole and actual intent to hinder,

4

delay, or defraud the Bank. (*Id*. ¶ 87.) On May 13, 2010, RSG and Lisa Gammonley transferred the North Washington property allegedly for the purpose of defrauding the Bank; this time to Defendant Di Giovanni as the North Washington Trustee in exchange for $10.00. (*Id*. ¶¶ 92.) Defendant Di Giovanni was allegedly either the initial transferee of the North Washington property, a person who directly benefitted from the second North Washington property transfer, or merely a subsequent transferee of the North Washington Property. (*Id*. ¶ 94.)

On February 29, 2012, at a time when Defendant RSG knew that he was personally liable to the Bank for over $23,000,000.00, RSG and Lisa Gammonley conveyed his interest in timeshare units (the "Timeshare Units") located in the U.S. Virgin Islands to five different trusts in exchange for $10.00. (*Id*. ¶¶ 117, 118.) The beneficiaries of the trusts were RSG and Lisa Gammonley's five minor children. (*Id*. ¶ 120.) As such, Defendant RSG retained effective control over the property by virtue of his status as a parent. (*Id*.) According to Plaintiff, RSG and Lisa Gammonley effectuated the transfer with the sole and actual intent to hinder, delay, or defraud the Bank. (*Id*. ¶ 119.)

In or around September 2009, Defendant RSG and his wife transferred various personal property ("RSG personal property") located at their North Washington property to either a trust or entity for the alleged purpose of hindering, delaying, or defrauding the bank. (*Id*. ¶¶ 137, 139.) Defendant RSG retained effective control over the personal property through his continued residence at the North Washington property. (*Id*. ¶ 142.)

On June 24, 2010, Defendants RTG and Jill Gammonley conveyed property located at 1111 S. Wabash, Unit 2602, Chicago, Illinois (the "Wabash property"), then-valued at more than $875,000.00, to Defendant Di Giovanni, as the Wabash Trustee, in exchange for zero consideration. (*Id*. ¶¶ 156, 157.) According to Plaintiffs, RTG and Jill Gammonley effectuated

the transfer with the actual intent to hinder, delay, or defraud the Bank. (*Id.* ¶ 159.) At the time of the transfer, Defendant RTG knew that he was personally liable to the Bank for more than $23,000,000.00. (*Id.* ¶ 157.) Again, Defendant Di Giovanni was allegedly either the initial transferee of the Wabash property, a person who directly benefitted from the Wabash property transfer, or merely a subsequent transferee of the Wabash Property. (*Id.* ¶ 161.)

Four days later, on June 28, 2010, Defendants RTG and Jill Gammonley conveyed property located at 14326 Bluff Road, Lakeside, Michigan (the "Bluff Road property") to the Bluff Road Trust in exchange for $10.00. (*Id.* ¶ 181.) The Bluff Road property was valued at $4,990,000.00 at the time of the transfer, which was again consummated allegedly for the purpose of hindering, delaying, or defrauding the Bank. (*Id.* ¶ 182.)

Then, on March 12, 2010, Defendant RTG transferred his interest in various items of personal property located at the Bluff Road property, including paintings, silver, boats, and cars (collectively, "RTG personal property") to Defendant Samson for little or no consideration. (*Id.* ¶¶ 204, 212.) At the time of the transfer, RTG knew that he was personally liable to the bank for more than $20,000,000.00. (*Id.* ¶ 206.) RTG allegedly carried out the transfer with the actual intent to hinder, delay, or defraud the Bank. (*Id.* ¶ 205.)

The Second Amended Complaint includes fourteen counts alleging that the various transfers described above were fraudulent in violation of the IUFTA, 740 Ill. Comp. Stat. 160/5(a)(1), 740 Ill. Comp. Stat. 160/5(a)(2), or 740 Ill. Comp. Stat. 160/6(a).

Defendants move to dismiss on several grounds. They contend that: (1) Counts I and II (fraudulent transfers by RSG, Lisa Gammonley, the North Washington Trustee, the North Washington Trust, and Spyder C) are barred by the statute of limitations and *res judicata*; (2) Counts III and IV (fraudulent transfers by RSG, Lisa Gammonley, the Children's Trusts, and the

Children's Trustee) should be dismissed with respect to Jill Gammonley because the properties in question were owned as tenants by the entirety; (3) Counts V and VI (fraudulent transfers by RSG, Lisa Gammonley, the RSG Trust, the RSG Trustee, and Spyder B) should be dismissed with respect to Lisa Gammonley because Plaintiff has failed to assert any legal or factual basis to name Jill Gammonley with respect to the transfers in question; (4) Counts VII and VIII (fraudulent transfers by RTG, Jill Gammonley, the Wabash Trust, the Wabash Trustee, and Samson D) should be dismissed because Wabash Property was held in joint tenancy by the entireties by RTG and Jill Gammonley and is thus unreachable by creditors; (5) Counts IX and X (fraudulent transfers by RTG, Jill Gammonley, the Bluff Road Trust, the Bluff Road Trustee and Samson C) should be dismissed because the Bluff Road Residence was held in joint tenancy by the entireties by RTG and Jill Gammonley and is thus unreachable by creditors; and (6) Counts I, II, VII, VIII, IX, and X fail to state cognizable claims to challenge transfers of property into tenancy by the entireties.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing this motion to dismiss, the Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## Analysis

### A. Counts I and II

#### 1. Dismissal for Untimeliness Is Inappropriate.

Defendants first assert that Counts I and II should be dismissed because Plaintiff failed to bring suit within the applicable limitations periods. As the Seventh Circuit repeatedly has held, a complaint need not anticipate nor overcome affirmative defenses, including one based on the relevant statute of limitation. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Accordingly, where a defendant raises the statute of limitations as an affirmative defense at the pleading stage, a court can only dismiss a claim "when [the] complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (quotation omitted).

Here, Plaintiff does not plead itself out of court. For example, Plaintiff does not affirmatively defeat by its own allegations the potential application of the equitable estoppel or tolling doctrines. Evidence gathered in discovery may show these doctrines to be applicable. *See, e.g., Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) (noting that "[w]hether the sins of a [defendant] may be used to extend the [statute of limitations] period" is a question that could not be tackled at the motion to dismiss stage).

Moreover, Section 10(a) of the IUFTA states that a cause of action with respect to a fraudulent transfer is extinguished unless action is brought "within 4 years after the transfer was made . . . or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant[.]" 740 Ill. Comp. Stat. 160/10(a). Nothing on the face of the Second Amended Complaint demonstrates Plaintiff's failure to satisfy the second proviso of

UFTA Section 10(a) (also known as the "discovery rule"). *Workforce Solutions v. Urban Servs. of Am., Inc.*, 977 N.E.2d 267, 278 (Ill. App. Ct. 2012).

Defendants nevertheless argue that Plaintiff's Second Amended Complaint is inadequate because it fails to provide a reason for Plaintiff's late discovery of Defendants' alleged fraudulent transfers: "Plaintiff having the burden did not assert any facts as why the action was not made within the four year period or why the discovery and/or challenge of the 'alleged' fraudulent transfer of the residence 'could not have occurred prior to expiration of the limitations period.'" (Defs.' Reply 8.) In support of this position, they cite *Gilbert Bros., Inc. v. Gilbert*, a case in which the Illinois Appellate Court held that "[a]n action brought under the fraudulent conveyance act is time barred unless the complaint contains an explanation of why discovery of the alleged fraud could not have occurred prior to the expiration of the limitations period." 630 N.E.2d 189, 192 (Ill. App. Ct. 1994). But, in diversity actions, the pleading requirements "are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting." 5 Wright & Miller, Federal Practice and Procedure § 1204; *see Colton v. Swain*, 527 F.2d 296, 304 (7th Cir. 1975) (fact that complaint may have failed to meet Illinois pleading requirements not determinative, federal pleading requirements govern); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (procedural requirements in federal court are governed by federal procedural law). Under federal pleading standards, a plaintiff need not negate defenses, such as the statute of limitations, in its complaint. *See, e.g., Clark v. City of Braidwood*, 318 F.3d 764, 767-68 (7th Cir. 2003).

For these reasons, the Court declines to dismiss Counts I and II as time barred.

### 2. Dismissal for *Res Judicata* Is Not Appropriate.

Defendants next assert that Plaintiff's Counts I and II should be dismissed based on the doctrine of *res judicata*. *Res judicata* likewise is an affirmative defense but may be considered under Rule 12(b)(6) where the plaintiff has, through the allegations in its complaint, pleaded itself out of court. *Muhammad v. Oliver,* 547 F.3d 874, 878 (7th Cir. 2008). Also, a court in ruling on a motion to dismiss may take judicial notice of matters in the public record, including pleadings and orders in previous cases, without converting a Rule 12(b)(6) motion into a motion for summary judgment. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) (district court properly considered public court documents from prior state court litigation in deciding defendants' motion to dismiss for failure to state a claim).

Plaintiff's prior suit was brought in Illinois state court, so the Court applies Illinois *res judicata* principles. *Chi. Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011) (citation omitted). Under those principles, subsequent litigation is barred where three elements exist: "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) [a new case presenting] the same cause of action, and (3) [involvement of] the same parties or their 'privies.'" *Id*. (citing *Hudson v. City of Chi.*, 889 N.E.2d 210, 215 (Ill. 2008)).

The doctrine of *res judicata* is inapplicable in this case because the state court has not rendered a final judgment. Although Plaintiff's Turnover Motion was denied by Judge Bonnie Wheaton in the Circuit Court of Du Page County, Illinois (the "Illinois case"), it was denied via an interlocutory order. *See* Defs.' Mem., Ex. B, Order. Illinois courts have held that "[*r*]*es judicata* does not apply to an interlocutory order." *People v. Taylor*, 6 Ill. App. 3d 961, 286 N.E.2d 122, 123 (1972); *see also Alliance Syndicate, Inc. v. Parsec, Inc.*, 318 Ill. App. 3d 590,

602 ("[i]nterlocutory orders cannot form the basis for claims of either *res judicata* or collateral estoppel."). Accordingly, the Court denies the motion to dismiss Counts I and II based on the doctrine of *res judicata*.

**B.     Counts III through X**

Defendants move to dismiss Counts III through X by impermissibly relying on extraneous exhibits that are nowhere mentioned in Plaintiff's Second Amended Complaint. For that reason, the Court denies the motion to dismiss these counts.

Rule 12(b) limits the scope of materials that a court may consider in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim: "[i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). Consequently, if documents outside of the pleadings are placed before a district court in support of a motion to dismiss, the Court must convert it to a motion for summary judgment and afford the plaintiff an opportunity to submit additional evidentiary material in opposition to the motion. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

It is true that, in the Seventh Circuit, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings" and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to [its] claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). But the Seventh Circuit has instructed that this is a "narrow" exception to the aforementioned rule. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2003); *see also Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("narrow exception" to conversion rule "aimed at cases interpreting, for example, a contract").

1. **Counts III and IV**

Defendants argue that Counts III and IV should be dismissed with respect to Jill Gammonley because the two timeshare properties located in the U.S. Virgin Islands labeled "Second Timeshare Unit" (Am. Compl. ¶ 112, 114) have been owned at all times by RSG and Lisa Gammonley as tenants by the entirety. Defendants' argument relies on a copy of a warranty deed purporting to reflect the tenancy by the entirety status of the Second Timeshare Unit.

Here, the warranty deed, *see* Defs.' Mem., Ex. D, is mentioned nowhere in Plaintiff's allegations and is certainly not "central" to Plaintiff's claim for fraudulent transfers. *Venture Assoc.*, 987 F.2d at 431. Because review of this ground for dismissal would require the Court to review materials outside the four corners of the Second Amended Complaint, the Court excludes the warranty deed and denies the motion to dismiss Counts III and IV with respect to Jill Gammonley.

2. **Counts V and VI**

Defendants similarly argue that Counts V and VI must be dismissed with respect to Lisa Gammonley because Plaintiff has not asserted "any legal or factual basis to name his wife [Lisa][3] Gammonley with respect to this challenged transfer." Defendants rely on exhibits submitted by Plaintiff in Plaintiff's Turnover Motion in the Illinois case. Again, these exhibits were nowhere mentioned in the Second Amended Complaint and are not central to Plaintiff's claim. Thus the Court denies the motion to dismiss Counts V and VI.

3. **Counts VII, VIII, IX, and X**

Defendants argue that Counts VII, VIII, IX, and X should be dismissed because the Wabash and Bluff Road properties are unreachable by creditors by virtue of their being owned

---

[3] Defendants' Memorandum mixes up Jill and Lisa Gammonley. *See* Defs.' Mem. Supp. Mot. Dismiss 6. Regardless as to whether Defendants intended to reference Jill, Defendants' argument relies on documents that are not properly considered by the Court on a motion to dismiss.

by RTG and Jill Gammonley as tenants by the entireties. Defendants again rely on extraneous exhibits, Exhibits E and G, that cannot be considered on a Rule 12(b)(6) motion to dismiss. *See* Defs.' Mem., Exs. E & G. Therefore, the Court denies the motion to dismiss Counts VII, VIII, IX, and X.

C. **Defendants' Alternative Argument in Support of Dismissing Counts I, II, VII, VIII, IX, and X.**

In the alternative, Defendants argue that Counts I, II, VII, VIII, IX, and X should be dismissed because Plaintiff has failed to allege that the property was transferred to a tenancy by the entireties with the "sole intent" to avoid payment of the spouse's debts, as required under 735 Ill. Comp. Stat. 5/12-112. That statute provides, in pertinent part:

> Any real property, any beneficial interest in a land trust, or any interest in real property held in a revocable *inter vivos* trust or revocable *inter vivos* trusts created for estate planning purposes, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due. [4]

As for Counts I and II, Plaintiff alleges that "the transfer of the North Washington Property into a tenancy by the entirety was designed with the sole intent to avoid any creditors

---

[4] As the Illinois Supreme Court has explained:

The sole intent standard provides greater protection from creditors for transfers of property to tenancy by the entirety. Under the sole intent standard, if property is transferred to tenancy by the entirety to place it beyond the reach of the creditors of one spouse *and* to accomplish some other legitimate purpose, the transfer is not avoidable. Such a transfer, however, would be avoidable under the actual intent standard, which only requires any actual intent to defraud a creditor. The General Assembly, by adopting the sole intent standard, has made it clear that it intends to provide spouses holding homestead property in tenancy by the entirety with greater protection from the creditors of one spouse than that provided by the Fraudulent Transfer Act.

*Premier Prop. Mgmt., Inc. v. Chavez*, 191 Ill. 2d 101, 109 (2000) (emphasis in original).

13

pursuant to 735 ILCS 5/12-112." 2d Am Compl. ¶¶ 89, 100–01. This is sufficient to withstand a motion to dismiss.

As for Counts VII, VIII, IX, and X, Plaintiff argues that the higher standard is unnecessary because those counts involve transfers into land trusts. This is incorrect. The Illinois statute provides that "[a]ny real property, [and] *any beneficial interest in a land trust* ... held in tenancy by the entirety shall not be liable to be sold upon judgment . . . except if the property was transferred into tenancy by the entirety with the *sole intent* to avoid payment of debts existing at the time of the transfer[.]" 735 Ill. Comp. Stat. 5/12-112 (emphasis added). Plaintiff alleges that Samson D, a land trust, is owned by RTG and Jill Gammonley as tenants by the entirety. (2d Am. Compl. ¶ 18.) Likewise, the Second Amended Complaint states that Samson C, also a land trust, is owned by RTG and Jill Gammonley as tenants by the entirety. (*Id.* ¶ 17.) Therefore, in order for Plaintiff to prevail on its claims with respect to Samson D and Samson C, it must satisfy the "sole intent" requirement. *See In re Werner*, 410 B.R. 797, 806 (Bankr. N.D. Ill. 2009) ("[i]t is the standard elucidated in [735 Ill. Comp. Stat. 5/12-112], rather than in the state or federal fraudulent transfer statutes, that determines whether a transfer of property into tenancy by the entirety may be avoided.").

That said, in federal court, allegations of fraud must be pleaded in conformance to federal pleading standards specified in Fed. R. Civ. P. 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id*. The "circumstances constituting fraud" include the identity of the person who committed the fraud, the time, place, and content of the fraud, and the method by which the fraud was communicated to the plaintiff. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.

1994). This is also known as the "who, what, when, where and how . . ." standard. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1994). This requirement insures that defendants have fair notice of plaintiffs' claims and grounds, providing defendants an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill. 1990).

Plaintiff's factual allegations provide the necessary "who, what, when, where and how" to satisfy the particularity requirement of Fed. R. Civ. P. 9(b) for these claims. *See DiLeo*, 901 F.2d at 626. In Counts VII and VIII, Plaintiff alleges that, on or about June 28, 2010, Defendants fraudulently conveyed the Wabash Property to the Wabash Trust without receiving any consideration in return. (2d Am. Compl. ¶¶ 158, 159.) Plaintiff alleges that Defendants' transfer was executed with the intent to hinder, delay, or defraud the Plaintiff. *Id.* In Counts IX and X, Plaintiff alleges that, on or about June 28, 2010, Defendants fraudulently conveyed the Bluff Road Property to the Bluff Road Trust without receiving adequate consideration in return. (*Id.* ¶¶ 181, 193.) Plaintiff alleges that Defendants' transfer was executed with the intent to hinder, delay, or defraud the Plaintiff. *Id.* Taken as true for the purposes of this motion, these allegations are sufficient at the pleading stage, and Defendants' motion to dismiss Counts I, II, VII, VIII, IX, and X is denied.

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, the Court denies Defendants' motion to dismiss the Second Amended Complaint [54].

**SO ORDERED**          **ENTER: 3/6/15**

                                                   _____
                                                   **JOHN Z. LEE**
                                                   **United States District Judge**